**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**F. STEVEN KIRK and**
**DBS PLANNING CONSULTANTS,**

                              **Plaintiffs,**

            **vs.**                                          **1:10-CV-00110**
                                                             **(NAM/RFT)**

**NEW YORK STATE OFFICE OF COMMUNITY**
**RENEWAL and JOSEPH RABITO, individually**
**and in his official capacity.**

                              **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

DONOHUE, SABO, VARLEY & HUTTNER, LLP              Kenneth G. Varley, Esq.
P.O. Box 15056
24 Aviation Road
Albany, New York 12212-5056
_Attorneys for Plaintiffs_

ATTORNEY GENERAL OF THE
STATE OF NEW YORK                                 Michael G. McCartin, Esq.
The Capitol
Albany, New York 12224
_Attorneys for Defendants_

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

        Defendants New York State Office of Community Renewal ("OCR") and Joseph Rabito

("Rabito") move to dismiss the action under Fed. R. Civ. P. 12(b)(6) on the ground that the

complaint fails to state a claim upon which relief could be granted. (Dkt. No. 6).

## THE COMPLAINT[1]

Plaintiff Steven F. Kirk ("Kirk"), a resident of North Greenbush, New York, is the owner and principal of DBS Planning Consultants, Inc. ("DBS").  Kirk is a registered member of the Republican party.  DBS is a New York corporation that provides services for the planning and community and economic development needs of small municipalities in upstate New York.

OCR is a public benefit corporation with offices in Albany, New York.  OCR administers the Federal Community Development Block Grant ("CDBG") program in New York.  In March 2007, defendant Rabito was appointed Deputy Commissioner of the NYS Division of Housing and Community Renewal and President of OCR.  Rabito is a member of the Democratic party.

In administering the CDBG program, defendants are required to comply with federal rules and regulations regarding procurement and have promulgated their own procurement standards.  Pursuant to these regulations, the officials administering the CDBG program may not consider political affiliations.

Prior to March 2007, DBS was successful in obtaining and managing community development projects for municipal and not-for-profit clients funded through the CDBG program.  Since March 2007, plaintiffs claim that defendants have denied applications by plaintiffs' clients for CDBG grants causing the Greene County IDA to terminate its contract with plaintiffs and subjecting the plaintiffs' activities to excessive and unwarranted scrutiny and causing the Village of Athens to not use plaintiffs' services with respect to the "ELCO project".[2]  Plaintiffs claim that

---

[1] In reviewing the complaint, as well as plaintiffs' other submissions, the Court accepts as true all factual allegations and draws all reasonable inferences in plaintiffs' favor for purposes of the pending motion. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007).

[2] The Greene County IDA is the Industrial Development Agency.  http://greeneida.com (last visited December 13, 2010).  Plaintiffs do not identify the "ELCO project" with any specificity.

defendants "blackballed" plaintiffs from participation in the CDBG program and have subjected plaintiffs to adverse action due to Kirk's political affiliations.

The complaint sets forth two causes of action alleging violations of 42 U.S.C. § 1983 and one state law cause of action.  Plaintiffs claim that defendants' actions constitute an illegal interference with plaintiffs' First Amendment rights of association and further, constitute a denial of plaintiffs' equal protection rights.  Plaintiffs also allege they have been denied due process based upon Kirk's political affiliation and have been blackballed in an entirely arbitrary fashion without any finding of incompetence or wrongdoing.  Finally, plaintiffs allege that Rabito's actions constitute tortious interference with plaintiffs' contractual relationships.  Plaintiffs claim they lost their primary source of income and have been prevented from pursuing their livelihood resulting in severe financial losses.  Plaintiffs seek compensatory damages for financial loss, past and future emotional pain and suffering, injunctive relief, attorneys' fees and costs.

Defendants move to dismiss the complaint on the following grounds: (1) plaintiffs lack standing to raise the claims asserted because their alleged injuries are derivative of injuries suffered by third parties; (2) defendants are entitled to qualified immunity protection on plaintiffs' First Amendment claims; (3) plaintiffs' remaining federal claims are premised upon an insufficient First Amendment claim and thus, barred pursuant to Second Circuit precedent; and (4) plaintiffs did not pursue an Article 78 proceeding.  Defendants also claim that if no federal claims survive this motion to dismiss, this Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.

## DISCUSSION

**I.      Standard on Rule 12(b)(6)**

In addressing defendants' motion to dismiss, the Court accepts as true all of the factual allegations in the complaint and draws inferences from those allegations in the light most favorable to plaintiffs. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *McEvoy v. Spencer*, 124 F.3d 92, 95 (2d Cir. 1997). Dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims". *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001). It is well settled that the Court may not look to evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

## II.  Standing

Defendants argue that plaintiffs' lack standing to sue because plaintiffs' injuries are entirely derivative to the claims of others. Specifically, defendants contend that plaintiffs' alleged injuries are the result of defendants' denial of federal grants to plaintiffs' clients (third parties) and consequently, from plaintiffs' clients' decisions to discontinue business with plaintiffs. Plaintiffs disagree and claim they suffered actual harm because defendants, "solicit[ed] participants in the program not to do business with [plaintiffs]" which resulted in financial loss and constitutional violations.

"The doctrine of standing, which addresses the question of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues, embraces both

4

'constitutional' and 'prudential' requirements." *Ctr. for Reprod. Law and Policy v. Bush*, 304

F.3d 183, 195-196 (2d Cir. 2002) (citing *Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106

(2d Cir. 1992) (quotation marks and brackets omitted)).  The requirement of standing is "an

essential and unchanging part of the case-or-controversy requirement of Article III [of the United

States Constitution]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "'[T]he

irreducible constitutional minimum of standing' contains three elements: 1) the plaintiff must

have suffered an 'injury in fact'," that is, an invasion of a legally protected interest which is (a)

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) there

must be a causal connection between the injury and the conduct complained of, that is, the injury

has to be fairly traceable to the challenged action of the defendant, and not the result of the

independent action of some third party not before the court; and 3) it must be likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision." *See id.* at 560-61.

The burden of proof is on plaintiff to establish that he is a proper party.  *Id.*  "Pursuant to the

doctrine of prudential standing, a court must ask whether a plaintiff's claim rests on the legal

rights of a third party, asserts only a generalized grievance, or asserts a claim that falls outside the

zone of interests protected by the legal provision invoked."  *Ctr. for Reprod. Law and Policy*, 304

F.3d at 196.

    In support of the motion, defendants rely upon two Fifth Circuit cases:  *Pagan v.

Calderon*, 448 F.3d 16 (5th Cir. 2006) and *Duran v. City of Corpus Christi*, 240 F. App'x 639 (5th

Cir. 2007).  In *Pagan*, the plaintiff was retained as a consultant by a pharmaceutical manufacturer,

ARCAM.  The plaintiff alleged that due to Pagan's political affiliations, the defendants rejected

ARCAM's loan application and as a result, ARCAM was left financially strained and unable to

secure pharmaceuticals contracts.  The plaintiff alleged that as a consultant for ARCAM, his

livelihood depended upon ARCAM's viability.  *Pagan*, 448 F.3d at 30.  The plaintiff alleged that the defendants violated his First Amendment rights to free association, his due process rights and his equal protection guarantee.  On defendants' motion to dismiss, the Court stated that, "the fact that animus toward the agent sparked mistreatment of the principal does not create an exception to the rule that an agent's section 1983 claim can flourish only if he alleges that he personally suffered a direct, nonderivative injury".  *Id*. (citation omitted).  Thus, the Court held that the plaintiff's allegations were insufficient to create standing:

> It is not enough for the agent to allege an injury that is qualitatively different from that suffered by the principal; rather, the agent must allege an injury that does not derive from the injury to the principal.

*Pagan*, 448 F.3d at 30.

In *Duran*, the plaintiff contracted with a third party (Entrust), to serve as coordinator for a health plan administration contract that Entrust was awarded by the defendant, City of Corpus Christi.  *Duran*, 240 F. App'x at 640.  After the City failed to award a new health administration contract to Entrust, the plaintiff filed suit asserting that the defendant's decision was in retaliation for the plaintiff's protected speech regarding a prior disputed health care claim.  *Id.* at 641.  On the defendant's motion for summary judgment, the Circuit refused to recognize the plaintiff's standing as it was based on economic harm that was merely a consequence of an injury suffered by another party.  *Id*.  The Court noted that the plaintiff was not in contractual privity with the alleged government actor, the City.  *Id*. at 643.  Thus, the Court held that the plaintiff's injury (potential loss of future fees had Entrust been awarded a new contract by the defendant) was only derivative of Entrust's putative injury from nonrenewal of the contract.  *Id*. at 642-43.

In opposition to defendants' motion, plaintiffs argue that the present case is distinguishable from the facts presented in *Pagan* and *Duran*. Plaintiffs claim that while Pagan and Duran's injuries were the result of harm sustained by third parties, ARCAM and Entrust, Kirk and DBS suffered direct harm as "plaintiffs municipal clients have been encouraged by defendants not to use plaintiffs' services" and "[d]efendants have done this indirectly by denying grants to entities that use plaintiffs' services and subjecting plaintiffs' services to excessive scrutiny". Plaintiffs argue, "defendants are attempting to destroy [plaintiffs] business by making it clear to grant applicants that grants will not be awarded if plaintiff is the consultant".

Upon review, there are distinct factual dissimilarities that preclude this Court from relying solely upon the Fifth Circuit holdings as a basis to dismiss the complaint herein. Moreover, the holdings in both *Pagan* and *Duran* have not been relied upon, or even cited by any court in this Circuit. Neither party presents any further argument regarding standing. Thus, the Court is offers the following analysis on the issue of standing. *See Peck v. Baldwinsville Cent. Sch. Dist.*, 351 F.App'x 477, 479 (2d Cir. 2009).

**A.    Article III Standing**

"Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010). As a general rule, the "injury-in-fact" requirement means that a plaintiff must have personally suffered an injury. *W.R. Huff Asset Mgmt Co., LLC v. Deloitte & Touche LLC*, 549 F.3d 100, 107 (2d Cir. 2008) (citations omitted). The aim is to determine "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *U.S. v. Vazquez*,

145 F.3d 74, 81 (2d Cir. 1998) (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (internal quotation marks and citation omitted)).   Impairment of rights guaranteed by the Constitution may constitute sufficient injury to confer standing.  *See Authors League of Am., Inc. v Ass'n of Am. Publishers*, 619 F.Supp. 798, 805 (D.C.N.Y. 1985) (citing *Valley Forge Coll. v. Am. United*, 454 U.S. 464, 486 (1982)).   A plaintiff is entitled to present his claims of First Amendment constitutional wrongdoing when "a plaintiff has suffered 'threatened or actual injury' that results from a defendant's alleged illegal act."  *Osborne v. Fernandez*, 2009 WL 884697, at *44 (S.D.N.Y. 2009) (citing *Brooklyn Legal Servs. Corp. v. Legal Servs.*, 462 F.3d 219, 226 (2d Cir. 2006)). "[T]he plaintiffs must evince a 'specific present or future objective harm' that has caused them injury or that is likely to cause them injury in order to bring such claims".  *Id*. (citing *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 170 (2d Cir.1999)).

        "[C]ausation [is established by showing] a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant." *Hollander v. Inst. for Research on Women & Gender at Columbia Univ.*, 2009 WL 1025960, at *4 (S.D.N.Y. 2009) (citation omitted).  "Where intervening acts of third-parties exist, plaintiffs must at least allege the existence of each of the intermediate causal links in the chain from defendant's action through to the ultimate harm".  *See Goldberg v. UBS AG*, 660 F.Supp.2d 410, 417 (E.D.N.Y. 2009) (the plaintiffs sufficiently alleged a coherent and plausible causal nexus linking the defendants to the injury to meet their burden of establishing standing on a motion to dismiss despite the actions of independent third parties which the defendant claimed broke the chain connecting the defendants' actions to the alleged injury).  "[R]edressability [is] a non-speculative likelihood that the injury can be remedied by the requested relief."  *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F.Supp.2d 568, 584 (S.D.N.Y. 2010) (citations omitted).  "To meet this standard, a plaintiff

must allege facts that show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision'". *Id*.

"[G]eneral factual allegations of injury resulting from [the challenged statute and conduct] may suffice [to support the existence of standing], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 142 (2d Cir. 2000) (internal quotation marks and citation omitted).

Here, the complaint contains the following assertions: (1) defendants have generally blackballed plaintiffs to prevent their involvement in CDBG programs as grant application writers or project administrators because of Kirk's political affiliations; (2) defendants actions caused the Greene County IDA to terminate its contract with plaintiffs; (3) defendants actions caused the Village of Athens to not use plaintiffs' services with respect to a project; (4) plaintiffs have lost their primary source of income and have suffered severe financial loss; (5) plaintiffs have been denied due process by being blackballed without any accusations of wrongdoing or hearing; and (6) defendants' actions are entirely arbitrary. Plaintiff seeks compensatory damages and seeks to enjoin defendants from continuing to bar them from participation in the program.

Examining the facts in a light most favorable to plaintiffs, the Court finds that plaintiffs have standing to assert their claims. Plaintiffs have sufficiently alleged that they sustained and will continue to suffer actual injury as a result of government action. Plaintiffs contend that defendants blackballed plaintiffs, in retaliation for Kirk's political affiliations, effectively preventing plaintiffs from participating in the grant program and in the Village of Athens ELCO project and resulting in the termination of plaintiffs' contract with the Greene County IDA. As a result, plaintiffs lost their primary source of income and claim that their First Amendment rights

to free association, rights of equal protection and due process rights were violated.  These allegations are sufficient to establish an "injury in fact" for the purposes of standing.  Plaintiffs also allege that Plaintiffs have also adequately alleged that their injuries were caused by defendants' illegal interference and arbitrary decision to blackball plaintiffs from the CDBG program due to plaintiffs' political affiliations.  *See Lerman*, 232 F.3d at 142 ("we must draw some significance from the fact that [the plaintiff] is a direct 'object of the action . . . at issue'").  While third parties (plaintiffs' clients) were undoubtedly involved in the challenged actions, plaintiffs have alleged a plausible causal connection between their alleged injuries and defendants' actions.  Moreover, plaintiffs' alleged injuries could be redressed through compensatory damages and injunctive relief.

**B.    Prudential Concerns**

"Once it has been established that the plaintiffs have suffered actual injury that is fairly traceable to the defendant's conduct and that the court can fashion a remedy to eliminate the wrong, the plaintiffs must still demonstrate to the court that it should not decline to grant standing because of prudential considerations."  *Dalton Farms Assoc. v. Baker*, 704 F.Supp. 460, 461-462 (S.D.N.Y. 1989).  "These prudential concerns are 'self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked'".  *Id*.

Unlike the plaintiffs in *Pagan* and *Duran*, Kirk and DBS do not claim that their losses and constitutional violations of their rights resulted from the defendants failure to award a contract or the termination of a contract with a specific third party.  Rather, plaintiffs claim that defendants

10

retaliated against Kirk and DBS preventing them from participating in the CDBG program and a project with the Village of Athens.  Moreover, plaintiffs assert that defendants' actions caused the Greene County IDA to terminate plaintiffs' contract.  Plaintiffs are not asserting rights of third parties.  Rather, plaintiffs assert injuries that are both specific and their own.

Plaintiffs have alleged facts sufficient to meet the constitutional requirements of Article III and satisfy prudential concerns.  Accordingly, defendants' motion to dismiss plaintiffs' complaint for lack of standing is denied.[3]

## III.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity on plaintiffs' First Amendment claims because, "there do not appear to by any cases in which a consultant, who worked for a third party who was the actual applicant for a government contract, established a protectable First Amendment right".

A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but the defense faces a formidable hurdle when advanced on such a motion.  *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).  Public officials enjoy qualified immunity from liability under § 1983 "so long as their conduct does not violate a clearly established statutory or constitutional right." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).  The Second Circuit has held that "[a] right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his]

---

[3] Defendants argue that since plaintiffs alleged harm is wholly derivative, plaintiffs cannot establish the necessary proximate cause for a § 1983 action.  Defendants base this argument largely upon their standing argument. In Part I, this court rejected that argument.  Because the Court is required to accept the facts alleged in the complaint as true, proximate cause is not an issue resolved on a motion to dismiss.  *McCarthy v. Olin*, 119 F.3d 148, 165 (2d Cir. 1997); *see also In re September 11 Prop. Damage and Bus. Loss Litig.*, 468 F.Supp.2d 508, 525 (S.D.N.Y. 2006).

conduct was unlawful.'" *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)).

In determining whether qualified immunity applies, the Court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 818 (2009) (holding that although "the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory"). If the plaintiff establishes that the violation of a constitutional right occurred, the court can examine "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. 194 at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* Even where a right is clearly established, an official is entitled to qualified immunity nevertheless if "it was objectively reasonable for the public official to believe that his acts did not violate th[at] right[ ]." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991). However, the objective reasonableness of a defendants' actions depends at least in part on their alleged motivation in dealing with plaintiff. *Vega v. Artus*, 2009 WL 838124, at * 17 (N.D.N.Y. 2009). Therefore, an adjudication as to the applicability of the qualified immunity affirmative defense on the basis of the pleadings alone would be premature. *Id.*

In support of their position, defendants cite to four cases: *Board of County Com'rs Wabaunsee County, Kan. v. Umbehr*, *McClintock v. Eichelberaer*, *African Trade v. Abromaitis* and *Marinaccio v. Boardman*. In *Board of County Com'rs Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668 (1996), the Supreme Court held that the First Amendment protected independent contractors from the termination or prevention of automatic renewal of at-will government

12

contracts in retaliation for their exercise of the freedom of speech.  However, the Court "emphasized" that the holding was limited to cases involving the termination of a pre-existing commercial relationship with the government.  *Id.* at 685.  The Court did not address, "the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship".  *Id.*

In *McClintock v. Eichelberaer*, 169 F.3d 812, 816 (3d Cir. 1999), the Third Circuit distinguished the plaintiffs' status from that of the plaintiffs in *Umbehr*.  The Court held that the plaintiffs did not have an ongoing relationship with the defendant and were not providing services when the public entities terminated their relationship in retaliation for the plaintiffs' political activities.  *Id.* at 816.  Thus, the plaintiffs were not entitled to the First Amendment protection afforded by *Umbehr*.  *Id.* at 817.

In the case of *African Trade v. Abromaitis,* 294 F.3d 355 (2d Cir. 2002), the plaintiffs, experts in matters of African Trade, sought to be appointed by the defendant (the Commissioner of the Connecticut Department of Economic Community Development) as Connecticut's trade representative to African countries. When the defendant entered into a personal services agreement with another company, the plaintiffs claimed that they suffered retaliation for engaging in protected speech criticizing the defendants.  *Id.* at 358.  The defendants moved for summary judgment on the issue of qualified immunity relying upon *Umbehr*.  *Id.* at 359.  The issue presented was whether an applicant for a new government contract, who lacked a preexisting commercial relationship with the government, had a clearly established right not to be denied a contract in retaliation for protected speech.  *Id.* at 361.  The Second Circuit noted, "[n]either the Supreme Court nor this Court has yet addressed that question, and thus the right asserted by plaintiffs has not been clearly established".  *Id.*  The Court discussed the *McClintock* opinion and

13

concluded that a reasonable person in the defendants' position would not have understood from existing case law that it was unconstitutional to refuse to contract with plaintiffs because they had criticized his performance of his office duties. *Id*. at 362.

Finally, in a case in this district, the defendants relied upon *Umbehr* and *African Trade* and argued that they were entitled to summary judgment and dismissal of the plaintiffs' First Amendment claims based upon qualified immunity. *Marinaccio v. Boardman*, 2005 WL 928631 (N.D.N.Y. 2005). Defendants argued that qualified immunity was appropriate because the law did not provide for extension of First Amendment protection to mere bidders for government contracts. The Court discussed the *Umbehr, African Trade* and *McClintock* holdings and found the matter to be more similar to the facts presented in *McClintock* in that the contracts at issue were awarded sporadically. The Court held that the decisional law of another Circuit Court of Appeals may not be considered in determining whether plaintiffs had a clearly established right. *Id*. at *15. However, the *McClintock* holding was persuasive as an "illustration of how obscure the law was regarding the distinction between an applicant/bidder for a government contract and a contractor with a preexisting commercial relationship. Therefore, the Court held that there was "no clearly established First Amendment right [ ] for plaintiffs at the time". *Id*. at *16.

Plaintiffs claim that, "as of 2007, it was clearly established that it would be a violation of the plaintiffs' First Amendment rights of free association if the defendants took actions such as failing to award grants to plaintiffs' clients or pressuring plaintiff's clients to terminate their contracts with the plaintiffs because the defendants had concluded that enrolled republicans should not [] act as consultants to municipal entities involved in the CDBG program". In support of their position, plaintiffs rely upon *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996). In *O'Hare*, the Supreme Court held that First Amendment protections extended to an

independent contractor or regular provider of services who, in retaliation for refusing to comply with demands for political support, was removed from a list of contractors authorized to perform public services.[4]   Plaintiffs rely upon this case arguing that the plaintiff in *O'Hare* did not have, nor did he ever have, any direct contractual relationship with the City.   Based upon *O'Hare*, plaintiffs claim that the law of this Circuit clearly states that independent contractors may state a viable First Amendment claim for retaliation where the contractor is denied a bid in retaliation for the exercise of his right to free speech.   *See A.F.C Enterprises, Inc. v. New York City School Construction Auth.*, 2001 WL 1335010, at *17 (E.D.N.Y. 2001); *see also Women's Interart Center, Inc. v. New York City Econ. Develop. Corp.*, 2005 WL 1241919, at *22 (S.D.N.Y. 2005).

This Court is not persuaded by the cases cited by either party on this issue.   In each case cited, the court was confronted with a motion for summary judgment on the issue of qualified immunity, not a pre-answer motion to dismiss.   Moreover, while the parties present their own interpretations and applications of the various holdings, this Court finds instruction and relies upon a Second Circuit holding not discussed by either party, *Housing Works, Inc. v. Guiliani*, 56 F. App'x 530 (2d Cir. 2003).   In *Housing Works*, the plaintiff was a not-for-profit organization that provided services to the homeless and people with AIDS.   The plaintiffs depended on the defendant/City for funding.   The plaintiff entered into a number of contracts with the defendant. *Id.* at 533.   The plaintiff claimed that in retaliation for criticism of the Giuliani Administrations' HIV/AIDS policies, the defendant retaliated against the plaintiff and refused to renew its contracts.   *Housing Works, Inc.*, 179 F.Supp.2d 177, 188 (S.D.N.Y. 2001).   The Second Circuit discussed the language in *Umbehr* and specifically cited to the phrase "pre-existing *commercial*

---

[4] *O'Hare* and *Umbehr* were decided on the same day.

relationship". *Housing Works, Inc*., 56 F. App'x at 533 (emphasis supplied). The Court

reasoned:

> The defendants' argument presupposes, however, that when the Supreme Court in *Umbehr* said "pre-existing commercial relationship," it meant only continuing contractual relationships. This is too parsimonious a reading. Had the Court intended to limit *Umbehr* to situations where there was a continuing contract, it would have used language to that effect. Its choice of the broader term "commercial relationship" shows in no uncertain terms that the right of independent contractors against retaliation extends beyond cases of existing contracts. So too does the Court's decision on the same day in *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), which held that the First Amendment right against retaliation applied where the plaintiff, an independent contractor, did not have a continuing contract with the defendant, but was merely placed on a list of available contractors. *See id.* at 721 (holding it sufficient that there was "a relationship that, based on longstanding practice, [the plaintiff] had reason to believe would continue").

Id. at 533 (internal citations omitted).

Thus, the Court held that the plaintiff, "alleged a 'preexisting commercial relationship'

within the clearly established limits of *Umbehr* and therefore, the defendants were not entitled to

qualified immunity. *Housing Works, Inc*., 56 F. App'x at 533.

Having carefully considered the present record, the Court is not well-positioned at this

early stage to dismiss plaintiffs' First Amendment claims on the basis of qualified immunity.

Rather, the Court finds that "[r]esolution of qualified immunity depends on the determination of

certain factual questions that cannot be answered at this stage of the litigation." *Denton v.

McKee*, 332 F.Supp.2d 659, 666 (S.D.N.Y. 2004). For example, the complaint contains adequate

allegations of a commercial relationship between plaintiffs and defendants. The record, as it

presently exists, does not contain any evidence of the scope or nature of this commercial

relationship at the time of the alleged retaliation. Moreover, the issue of whether defendants acts

were "objectively reasonable" may depend upon the information defendants had when they allegedly failed to award contracts to plaintiffs' clients. *See Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 794 (2d Cir. 2002) (ruling on qualified immunity premature on motion to dismiss when the record did not clearly establish what information the defendants possessed when they allegedly deprived the plaintiff of her rights). Accordingly, defendants' motion to dismiss plaintiffs' First Amendment claims on qualified immunity is denied. This ruling is without prejudice to defendants raising the issue at a future point when it can be analyzed with the benefit of a more complete record.[5] *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998).

## IV.    Article 78

Defendants argue that plaintiffs failure to initiate Article 78 proceedings is fatal to their due process claims. Plaintiffs contend that defendants adverse actions were not the "random and unauthorized" decisions of a lower-echelon employee. Thus, a post-deprivation Article 78 proceeding would not provide an adequate remedy.

It is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies or state administrative remedies. *Kraebel v. New York City Dep't of Hous. Pres. and Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) (internal citation omitted) (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 500-01 (1982)). If the deprivation is caused by random, unauthorized state conduct and an adequate post-deprivation hearing is available, there is no denial of "due process", and therefore, no constitutional violation on which to base a § 1983 claim. *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527, 543 (1981)); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). However, this

---

[5] As the Court has denied defendants' motion for dismissal of the First Amendment claims, defendants' analogous argument for dismissal of the remaining federal claims is also denied.

principle does not apply where the deprivation was caused by high-ranking officials who had

"final authority over the decision-making process." *Dwyer v. Regan*, 777 F.2d 825, 832 (2d Cir.

1985), *modified,* 793 F.2d 457 (2d Cir. 1986); *see, e.g., DiBlasio v. Novello*, 344 F.3d 292, 302

(2d Cir. 2003), *cert. denied*, 541 U.S. 988 (2004).

Here, plaintiffs rely upon *Dwyer* and argue that defendant was the President of the OCR

and thus, had final authority over the decision making process related to CDBG grants.

Defendants have not addressed or responded to that argument.  Plaintiffs identified Rabito as a

high level administrator whose conduct allegedly caused them to suffer a deprivation of due

process.  At this stage of the litigation, plaintiffs have sufficiently stated a claim that defendants

deprived them of due process to survive a motion to dismiss on this issue. *See Oladokun v. Ryan*,

2007 WL 3125317, at *4-5 (S.D.N.Y. 2007) (on a motion to dismiss, despite conflicting accounts

of the events, the plaintiff adequately alleged that highranking officials failed to provide the

plaintiff with adequate process).  Accordingly, defendants' motion to dismiss plaintiff's due

process claims on this basis is denied.

**V.      Supplemental Jurisdiction over State Law Claims**

Defendants' motion to dismiss plaintiff's federal claims is denied.  Therefore, the Court

will retain supplemental jurisdiction over plaintiffs' state law claims.

## CONCLUSION

Accordingly, it is

**ORDERED** that defendants' motion to dismiss (Dkt. No. 6) is **DENIED**.

**IT IS SO ORDERED.**

Date:   January 27, 2011

_____

Norman A. Mordue

Chief United States District Court Judge